NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0059n.06

No. 15-5011

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ELLEY A. LOPREATO, APRN, RN; SUSAN M. TAYLOR, RN | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| SELECT SPECIALTY HOSPITAL-NORTHERN KENTUCKY, dba Select Specialty Hospital; SELECT MEDICAL CORPORATION | ) ) ) ) | COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| Defendants-Appellees. | ) | |

**FILED**
Jan 29, 2016
DEBORAH S. HUNT, Clerk

BEFORE:     BATCHELDER, ROGERS, AND COOK, Circuit Judges.

ROGERS, Circuit Judge. Plaintiffs Elley Lopreato and Susan Taylor appeal the district court's decision granting summary judgment on their claims under the Americans with Disabilities Act against their hospital employer. Lopreato and Taylor alleged that their drug addictions constituted disabilities under the ADA and the hospital's decision not to hire them solely because they had restrictions on their professional nursing licenses—restrictions which were placed on their licenses as a result of participating in a state-sanctioned drug rehabilitation program—violated the ADA. There is not a genuine issue of material fact as to whether the hospital articulated a legitimate and nondiscriminatory reason for its decision not to hire Lopreato and Taylor or as to whether its stated reason for not hiring them was a pretext for

No. 15-5011
*Elley Lopreato, et. al. v. Select Specialty Hospital-Northern Kentucky, et. al.*

unlawful discrimination.  The district court therefore properly granted summary judgment to the hospital.

Lopreato began working for St. Elizabeth Hospital in 1997 and became a nurse in 1999. Sometime in 2007, Lopreato became addicted to a narcotic called fentanyl and began stealing fentanyl from St. Elizabeth for her personal use.  In April 2007, St. Elizabeth learned that Lopreato was diverting drugs and terminated Lopreato.

Lopreato then entered into the Kentucky Alternative Recovery Effort for Nurses program ("KARE").  KARE is an alternative program run by the Kentucky Board of Nursing that attempts to rehabilitate nurses who have substance use disorders.  201 Ky. Admin. Regs. 20:450. In order to enroll in KARE, an individual must admit "in writing to having a substance use disorder" and agree to sign a program agreement that may require the individual to undergo substance use disorder treatment and drug testing and to agree not to use alcohol and mood-altering substances.  *Id.*  After enrolling in KARE, Lopreato signed a program agreement with the Kentucky Board of Nursing that placed restrictions on her nursing license.  Lopreato initially agreed not to work in any nursing position.  Lopreato later signed a program agreement that allowed her to work in certain nursing positions, subject to supervision in connection with the provision of narcotics.

In November 2008, Cardinal Hill Specialty Hospital, a long-term acute care hospital in northern Kentucky, hired Lopreato.  At the time Lopreato was hired, Lopreato told Cardinal Hill's Clinical Director, Theresa Schneider-Eubank, that Lopreato had been terminated for diverting drugs from St. Elizabeth and was in KARE.

Taylor received her bachelor's degree in nursing in 1992.  In 1997 or 1998, Taylor began working in hospice care at St. Elizabeth.  While working at St. Elizabeth, Taylor stole drugs from

No. 15-5011
*Elley Lopreato, et. al. v. Select Specialty Hospital-Northern Kentucky, et. al.*

St. Elizabeth for her personal use.  St. Elizabeth terminated Taylor after she failed a drug test and admitted that she had stolen drugs.  In 2007, Taylor entered into the KARE program.  Like Lopreato, Taylor signed program agreements with the Kentucky Board of Nursing that placed restrictions on Taylor's nursing license that became more permissive as Taylor continued to participate in KARE.

Cardinal Hill hired Taylor in March 2011.  Schneider-Eubank knew that Taylor was in KARE and sent reports to KARE about Taylor's performance at Cardinal Hill.

In late November 2011, defendant Select Hospital[1] began to prepare to take over the long-term acute care hospital at St. Elizabeth.  Some employees at Cardinal Hill, including Lopreato and Taylor, applied for positions with Select.  Select's employment application asks: "Have you ever had your professional license restricted, suspended or terminated, or is your professional license currently under an investigation or review that could result in one of these actions?  If yes, please explain."  Lopreato and Taylor both answered yes and stated that they had no current restrictions.  At the time, however, Lopreato's and Taylor's agreements with KARE limited the ability of them both to work long hours and to administer narcotics without supervision.

Lopreato and Taylor both interviewed with Tammy Sparks, Select's Regional Director of Human Resources.  During her interview, Lopreato told Sparks that Lopreato was in the KARE program.  Lopreato told Sparks that Lopreato was in KARE because she was "sick and had some family issues" for which she had received therapy and also "probably said [that she was] in recovery and doing very well."  However, Lopreato did not tell Sparks that she was in therapy

---

[1]For convenience, we refer to defendants Select Specialty Hospital-Northern Kentucky, LLC dba Select Specialty Hospital and Select Medical Corporation collectively as "Select Hospital" or "Select."

No. 15-5011
*Elley Lopreato, et. al. v. Select Specialty Hospital-Northern Kentucky, et. al.*

for drug use, was addicted to drugs, or give Sparks reason to believe that she was a recovering drug addict. Taylor also told Sparks that Taylor was in KARE and was in "recovery," but did not tell Sparks why Taylor was in KARE or that Taylor had diverted narcotics from St. Elizabeth.

During the time that Select was considering Lopreato and Taylor for employment, Schneider-Eubank told Pat Alexander, Division Director of Clinical Services at Select, that she had two nurses who were "in the process of completing their KARE Program, that [she] had no issues with them, and that their evaluations were exemplary, their skill levels were up." Schneider-Eubank told Alexander that KARE was a "very comprehensive" program in which nurses work on issues that caused their licenses to be restricted and that KARE required nurses to report in and take drug tests. However, Schneider-Eubank did not tell Alexander that Lopreato and Taylor were in KARE because of drug issues.

After talking to Schneider-Eubank, Alexander talked to a corporate executive at Select. Alexander then told Schneider-Eubank that Alexander's supervisors said Lopreato and Taylor would not be hired because Select had "too much recidivism" and that "the VP said, no, the recidivism is too high." Schneider-Eubank did not state the name of the person who made the statement about "recidivism" to Alexander, but Lopreato and Taylor assert that Mary Burkett, who was Select's Vice President of Clinical Quality for the Inpatient Division at this time, said this statement to Alexander.[2] Schneider-Eubank then told Alexander how far Lopreato and

---

[2]In a sworn statement that was not included in the record submitted to the district court, Schneider-Eubank testified that she believed that Alexander had spoken to a vice president whose "first name was Mary." Plaintiffs ask the court to take judicial notice of this sworn statement. Fed. R. App. P. 10(e)(2) provides that this court may supplement the record presented before the district court "[i]f anything material to either party is omitted from or misstated in the record by error or accident." Plaintiffs do not claim that they omitted this statement, which they say was taken before they filed their complaint, from the record by error or by accident. Because

-4-

No. 15-5011
*Elley Lopreato, et. al. v. Select Specialty Hospital-Northern Kentucky, et. al.*

Taylor were in KARE and reiterated that Schneider-Eubank "had no issues with them." Alexander talked to her supervisors again and again told Schneider-Eubank that Select would not hire Lopreato and Taylor because there was "[t]oo much recidivism."

Mary Burkett initially claimed that she did not have authority to reject applicants from Cardinal Hill but later acknowledged that she approved the decision not to hire Lopreato and Taylor. Burkett stated that she understood that both nurses had restrictions on their licenses and had diverted drugs at a prior employer. However, Burkett stated that Burkett did not know that either nurse claimed to have disabilities or records of disabilities or that Lopreato and Taylor claimed to be drug addicts or had used drugs. Burkett stated that an individual who steals drugs is not necessarily a drug addict.

Burkett testified that Select's decision not to hire Lopreato and Taylor was "consistent" with Select's practice of not hiring nurses "who have current or previous restrictions or disciplinary action on their license[s] . . . regardless of the reason for the disciplinary action or restriction." Burkett explained that a nurse can be subject to restrictions for "many different reasons, ranging from patient abuse, poor patient care, or drug diversion" and that Select's practice "is the same regardless of the reason for the disciplinary action or restriction."

---

"the purpose of Rule 10(e)(2) is to permit the court to correct omissions from or misstatements in the record for appeal, not to introduce new evidence in the court of appeals," *United States v. Murdock*, 398 F.3d 491, 500 (6th Cir. 2005) (internal quotation marks omitted), we deny plaintiffs' motion to take judicial notice of the Sworn Statement.

We also decline to allow the plaintiffs to supplement the record based on any inherent equitable power this court has because the plaintiffs do not contend the Sworn Statement would establish their claims beyond any doubt. As we explained in *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1013 (6th Cir. 2003), "[a] primary factor which we consider in deciding a motion to supplement the record is whether acceptance of the proffered material into the record would establish beyond any doubt the proper resolution of the pending issues." *Id.* (quoting *CSX Transp., Inc. v. City of Garden City*, 235 F.3d 1325, 1330 (11th Cir. 2000)).

No. 15-5011
*Elley Lopreato, et. al. v. Select Specialty Hospital-Northern Kentucky, et. al.*

Burkett stated that Select adopted this practice because of Select's "vulnerable patient population and the small size of its facilities."   Burkett explained that long-term acute care hospitals like Select "provide highly specialized care to promote recovery from the most critically and medically-complex patients" and that caring for these patients and their families is "difficult and stressful."   Burkett stated that Select operates "efficiently" and requires its nurses to be able to operate independently "without constant direct supervision."   Burkett stated that in her experience a person who has restrictions on her nursing license "has engaged in conduct in violation of their nursing license" and that Select's experience was that "individuals who had engaged in past misconduct were likely to repeat misconduct."   Burkett explained that "[t]his recidivism of illegal conduct or misconduct in violation of a nurse's nursing license was a significant concern" because Select did not have the resources to prevent misconduct and because such misconduct could have "catastrophic and deadly results for [its] patients."

Lopreato and Taylor subsequently filed charges with the Equal Employment Opportunity Commission.   After receiving right to sue letters, the two nurses then filed a lawsuit against Select in federal district court, alleging that during the relevant times they each had a chemical dependency which constituted a disability under the ADA and that Select had discriminated against them in violation of the ADA when Select decided not to hire them based on these disabilities.   Lopreato and Taylor also brought a separate claim for punitive damages.

The district court granted Select's motion for summary judgment on the plaintiffs' disability discrimination claims.   *Lopreato v. Select Specialty Hosp.-Northern Kentucky, LLC*, No. 12-217-DLB-JGW, 2014 WL 6804221 (E.D. Ky. Dec. 3, 2014).   The district court concluded that the plaintiffs' claims were based on a theory of disparate treatment because their arguments tracked the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting

-6-

No. 15-5011
*Elley Lopreato, et. al. v. Select Specialty Hospital-Northern Kentucky, et. al.*

framework that applies to disparate treatment claims.  2014 WL 6804221 at *5 n.3.  The district court doubted that Lopreato and Taylor could establish prima facie cases of disability discrimination because they likely could not show that their drug addictions constituted disabilities under the ADA or that Select knew or should have known that Lopreato and Taylor were disabled.  *Id*. at *6−7.  However, because the district court was not certain whether a reasonable juror could conclude that plaintiffs established these challenged elements of their prima facie cases, the district court deferred these issues and considered the remaining elements of the *McDonnell Douglas* framework.  *Id*. at *7.

The district court concluded that Select's practice provided a legitimate, nondiscriminatory reason to not hire Lopreato and Taylor because Select's practice was similar to an employer's policy of not rehiring employees who were previously terminated for any violation of workplace conduct rules.   In doing so, the court relied on *Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003), in which the Supreme Court had held that such a policy was legitimate and nondiscriminatory.  2014 WL 6804221 at *7−8.  The district court rejected Lopreato's and Taylor's arguments that Select's practice was not neutral because the practice had an adverse impact on recovering drug addicts and lacked a legitimate business rationale.  *Id*. at *8.  The district court explained these arguments failed because the Supreme Court had observed in *Hernandez* that "such disparate-impact arguments are not applicable at any stage within the *McDonnell Douglas* framework."  *Id*.

The district court noted that it was possible to conclude that Lopreato and Taylor had not met their required burden under the *McDonnell Douglas* framework because they did not argue that Select's practice was a pretext for unlawful discrimination.  *Id*. at *9 n.10.  The district court concluded that in any event the evidence that Lopreato and Taylor could have offered to make

No. 15-5011
*Elley Lopreato, et. al. v. Select Specialty Hospital-Northern Kentucky, et. al.*

this showing was insufficient to withstand summary judgment for three reasons.  First, it would be a stretch to infer from Burkett's knowledge that Lopreato and Taylor had been terminated from a prior employer for diverting drugs that Burkett decided not to hire them because Burkett believed that they were disabled; second, Select's interest in the two nurses' participation in KARE was limited; and third, Select used the word "recidivism" to describe why Select would not hire Lopreato and Taylor in a generic sense to express Select's concerns about recidivism of any type of misconduct.  *Id*. at *9−10.  The district court further concluded that Select's stated reasons for adopting the practice were credible and noted that the two nurses themselves seemed to agree that Select's decision not to hire them was based on Select's practice rather than upon the fact that they were allegedly disabled.  *Id*. at *10.  The district court concluded that because Select's decision not to hire the two nurses was motivated by a neutral company policy, their claims of disability discrimination and their claims for punitive damages failed as matter of law. *Id*.

The district court properly determined that Lopreato and Taylor have not offered sufficient evidence to create a genuine issue of material fact as to whether Select had set forth a legitimate, non-discriminatory reason for not hiring them that was not a pretext for unlawful discrimination.  Under the *McDonnell Douglas* framework, "[i]f the plaintiff establishes the elements for a prima facie case [of disability discrimination], the burden then shifts to the defendant to set forth a legitimate, nondiscriminatory reason for the adverse employment action it took against the plaintiff."  *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 883 (6th Cir. 1996). Select claimed that its decision not to hire Lopreato and Taylor was based upon Select's practice of not hiring nurses who have current or previous restrictions or disciplinary action on their licenses.  It is undisputed that Select's practice applies to all applicants who have or have had

No. 15-5011
*Elley Lopreato, et. al. v. Select Specialty Hospital-Northern Kentucky, et. al.*

restrictions on their professional licenses, regardless of whether the applicant's license is or has been restricted because the applicant is disabled or because of some other reason. Further, Lopreato and Taylor did not allege that Select treated them differently than similarly situated applicants who were not disabled. For instance, Select did not hire any non-disabled applicants who had prior restrictions on their licenses that resulted from the applicants' engagement in misconduct that was not connected to drug abuse. Select's practice is therefore legitimate and nondiscriminatory because Select's practice applies equally to all nurses with current or prior restrictions on their licenses.

Select's practice of denying employment to individuals whose licenses had been restricted because they participated in a drug rehabilitation program has not been shown to be illegitimate or discriminatory. In *Hernandez*, the Supreme Court held that an employer's policy of not rehiring any employee who had been previously terminated for a violation of workplace conduct rules provided "by definition, a legitimate, nondiscriminatory reason under the ADA" not to rehire the plaintiff, even though the plaintiff had been previously terminated because his drug use violated the employer's workplace conduct rules. 540 U.S. at 47, 51−52. *Hernandez* therefore establishes that an employer's decision to reject an applicant because the applicant did not have a neutral characteristic which the employer requires of all employees is legitimate and nondiscriminatory, even if the rejected applicant lacks the desired characteristic because he is disabled. Accordingly, Select's decision not to hire Lopreato and Taylor because Select had a practice of not hiring nurses whose licenses had current or prior restrictions is legitimate and nondiscriminatory, even though Lopreato's and Taylor's licenses were restricted because they were participants in KARE.

-9-

No. 15-5011
*Elley Lopreato, et. al. v. Select Specialty Hospital-Northern Kentucky, et. al.*

The contention by Lopreato and Taylor that Select's practice is not actually legitimate and nondiscriminatory because Select's practice disproportionately impacts drug addicts, while perhaps plausible, would only be relevant if Lopreato and Taylor had pursued a disparate impact theory, which they have not.  The Supreme Court held in *Hernandez* that whether an employer's stated reason for taking an adverse employment decision has a disparate impact on a protected class "pertain[s] to disparate-impact claims but not disparate-treatment claims."  540 U.S. at 54. Lopreato and Taylor acknowledge that they alleged only disparate treatment claims.

In addition to failing to establish that Select's practice was illegitimate and discriminatory, Lopreato and Taylor did not create a genuine issue of material fact as to whether Select's practice was a pretext for unlawful discrimination.  Because Select met its burden to establish a legitimate, nondiscriminatory reason for not hiring the two nurses, the burden shifts to them to prove by a preponderance of the evidence that Select's proffered reason for not hiring them was actually a pretext for unlawful discrimination.  *Kocsis*, 97 F.3d at 883.  Lopreato and Taylor did not meet this burden because they did not put forth sufficient evidence to allow a reasonable juror to conclude that Select's decision not to hire them was motivated by their alleged disabilities rather than by Select's neutral practice of not hiring any nurses who had restrictions on their licenses.

In particular, Select's use of the word "recidivism" does not indicate that Select decided not to hire the two nurses because Select was concerned that they were likely to repeat misconduct related to drug abuse.[3]  The employee who told Schneider-Eubank that Select would

---

[3]Plaintiffs also contend that Select's alleged statement to Schneider-Eubank that Select did not want to hire them because Select had "been burnt by these people before" establishes that Select's practice was a pretext.  This alleged statement does not create a genuine issue of material fact as to whether Select's practice was a pretext because there is no evidence in the record that Select actually made this statement to Schneider-Eubank.

-10-

No. 15-5011
*Elley Lopreato, et. al. v. Select Specialty Hospital-Northern Kentucky, et. al.*

not hire the two nurses because Select was concerned about "recidivism" did not explain what Select meant when Select used the word "recidivism."   The record therefore does not establish that Select actually used the word "recidivism" to indicate that Select was concerned about recidivism with respect to misconduct related to drug addiction in particular rather than about recidivism with respect to misconduct in general.   To the contrary, Burkett's testimony that Select was concerned that individuals whose licenses had been restricted for any type of past misconduct—whether resulting from drug diversion, patient abuse, or other actions—would be likely to repeat that misconduct indicates that Select used this word in a generic sense. Accordingly, Select's use of the word "recidivism" did not create a genuine issue of material fact as to whether Select's practice was a pretext for unlawful discrimination because a reasonable juror would not conclude that Select used this word to indicate that Select was concerned that Lopreato or Taylor would repeat misconduct related to drug addiction.

Lopreato and Taylor also argue that Select's practice is a pretext because it does not actually prevent Select from hiring employees who are likely to engage in misconduct. However, pretext cannot be shown under the *McDonnell Douglas* burden-shifting framework by "simply substitut[ing] their own business judgment for that of the defendant."   *Rowan v. Lockheed Martin Energy Systems, Inc.*, 360 F.3d 544, 550 (6th Cir. 2004).  Moreover, because Lopreato and Taylor did not cite any facts to support their assertion that Select's practice does not actually benefit Select, their subjective belief that Select's practice is unwise is insufficient as a matter of law to establish pretext.   "Conclusory statements unadorned with supporting facts are insufficient to create a factual dispute that will defeat summary judgment."   *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009).

-11-

No. 15-5011
*Elley Lopreato, et. al. v. Select Specialty Hospital-Northern Kentucky, et. al.*

Plaintiffs' argument that upholding Select's practice would allow employers to discriminate against "any protected class of employees *if* they can pretend to categorize them, not by their protected disability, but by a common characteristic they share with employees who are not in a protected class" also fails.   An employer could design a practice that forbids the employer from hiring potential employees who have a common characteristic that both disabled and non-disabled people share in order to avoid hiring disabled people.   However, upholding Select's practice would not allow such discriminatory practices to flourish because plaintiffs could successfully challenge these types of practices on disparate impact theories by showing that these practices disproportionately impact disabled people.

Because there is not a genuine issue of material fact as to whether Select has set forth a legitimate, non-discriminatory reason for not hiring Lopreato and Taylor which was not a pretext for unlawful discrimination, the district court properly held that the plaintiffs' disability discrimination claims failed as a matter of law.   The district court also properly rejected plaintiffs' punitive damages claims because these claims are "not . . . separate cause[s] of action, but . . . remed[ies] potentially available for another cause of action."   *Dalton v. Animas Corp.*, 913 F. Supp. 2d 370, 378 (W.D. Ky. 2012).

The judgment of the district court is affirmed.

-12-